UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

CARL WESSON,

               Petitioner,

v.

               No.  1:19-CV-00187-H

DIRECTOR, TDCJ-CID,

               Respondent.

## OPINION AND ORDER

Petitioner Carl Wesson, a state prisoner proceeding pro se and *in forma pauperis*, seeks a federal writ of habeas corpus under 28 U.S.C. § 2254 to challenge three state-court convictions. (*See* Dkt. No. 2.)  Respondent filed an answer with brief in support and relevant records. (*See* Dkt. Nos. 11, 12, 21, 22.)  Wesson filed a reply. (*See* Dkt. No. 13.) As explained below, the Court concludes that Wesson's petition should be denied and dismissed with prejudice.

### 1.    Background

In August 2016, a Texas jury found Wesson guilty of three counts of indecency with a child. (*See* Dkt. No. 12-1 at 12–15.)  In each count, Wesson was charged with sexually abusing K.J., the minor daughter of Wesson's girlfriend and later wife, Renee Jackson. Specifically, the jury found that, on or about August 8, 2012, Wesson intentionally and knowingly touched K.J.'s genitals with his hands (Count Two); touched her genitals with his genitals (Count Three); and exposed his genitals to her (Count Four), all with the intent to arouse or gratify his sexual desire. (*Id.* at 7–8.)  Wesson's convictions stem from, among other evidence, K.J.'s three sexual-abuse outcries and trial testimony that, from 2010 through 2012, Wesson regularly snuck into her bed at night and touched her genitals with either his hand or penis and/or exposed his penis to her.  In addition, Renee and K.J. both

testified that, in August 2012, Renee devised a plan to, in essence, catch Wesson in the act of sexually abusing K.J. so the police would believe K.J.'s allegations. She felt that doing so was necessary because, in 2010 and 2011, K.J. had, for different reasons, recanted her previous outcries. Renee testified that, one night in early August 2012, while hiding in K.J.'s closet, she saw Wesson climb into K.J.'s bed and start masturbating.

The jury assessed Wesson's punishment at 18 years' imprisonment for Count Two; 12 years' imprisonment for Count Three; and 10 years' imprisonment for Count Four. (*Id.* at 16–19.) The trial court entered judgments on each conviction and ordered that Wesson's sentences run concurrently. (*Id.* at 20–28.)

Wesson appealed his convictions on the ground that the State adduced insufficient evidence to support them. The Court of Appeals for the Eleventh District of Texas (COA) affirmed Wesson's convictions, and the Texas Court of Criminal Appeals (TCCA) refused his petition for discretionary review (PDR). (*See* Dkt. No. 11-17 at 44–55.) *See also Wesson v. State*, No. 11-16-00269-CR, 2018 WL 1440556 (Tex. App.—Eastland 2018, pet. ref'd).

Wesson then filed a state habeas application in the trial court, challenging the validity of his convictions on nine grounds. The trial court did not hold an evidentiary hearing or enter any findings of fact or conclusions of law. Instead, it directed the district clerk to prepare and send the appropriate record to the TCCA after the State either filed a response or its deadline to do so lapsed. It appears from the administrative record that the State never filed an answer. On July 3, 2019, the TCCA denied Wesson's application without written order. (*See* Dkt. No. 12-1 at 35.)

Wesson filed this federal petition on August 26, 2019.[1] He challenges the legality of his convictions on the same nine grounds that he raised in his state habeas application and

---

[1] *See Spotville v. Cain,* 149 F.3d 374, 378 (5th Cir. 1998) (providing that a prisoner's habeas petition is deemed to be filed when he delivers the papers to prison authorities for mailing).

seeks an evidentiary hearing and new trial. Respondent answers that some of Wesson's claims have no merit and that others are not cognizable under Section 2254. Wesson disagrees, insisting that his grounds for relief have merit.

After reviewing the parties' pleadings, relevant records, and applicable law, the Court, for the following reasons, agrees with Respondent and concludes that an evidentiary hearing is not necessary to resolve Wesson's claims. The Court will address the merits of each claim below.

## 2.    Legal Standard

It is undisputed[2] that this Court must review Wesson's federal petition under the highly deferential standard established by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which provides that "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States;[3] or

---

[2] Because Wesson filed his federal petition after the April 24, 1996 effective date of AEPDA and neither party argues that the TCCA *did not* adjudicate his claims on the merits, the Court concludes that AEDPA governs the Court's review of Wesson's claims. Moreover, in Texas writ jurisprudence, a summary "denial" signifies that the state high court "addressed and rejected the merits of a particular claim," but a "dismissal" means that the court "declined to consider the claim for reasons unrelated to the claim's merits." *See Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997); *see also Barrientes v. Johnson*, 221 F.3d 741, 780 (5th Cir. 2000).

[3] A state-court decision is contrary to clearly established federal law if "it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Busby v. Dretke*, 359 F.3d 708, 713 (5th Cir. 2004). A decision constitutes an unreasonable application of clearly established federal law if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000); *see also Pierre v. Vannoy*, 891 F.3d 224, 227 (5th Cir. 2018) (explaining that a petitioner's lack of "Supreme Court precedent to support" a ground for habeas relief "ends [his] case" as to that ground).

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[4]

28 U.S.C. § 2254(d)(1)–(2).

Relief may not be granted under either subsection of Section 2254(d) unless the petitioner can show that the state court's ultimate decision that a claim lacks merit was *unreasonable*. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011). It is not enough to show that the state court's decision was *incorrect*; federal habeas relief is "not a substitute for ordinary error correction through direct appeal." *See Sanchez v. Davis*, 936 F.3d 300, 304–05 (5th Cir. 2019) (citing *Richter*, 562 U.S. at 102–103)). Rather, the petitioner must demonstrate that the state court's ultimate decision "was so lacking in justification that there was an error so well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. In other words, if there is any room for principled judicial disagreement on how a given claim should be adjudicated, then the petitioner is not entitled to relief. *See Sanchez*, 936 F.3d at 304.

This standard is intentionally "difficult to meet" and "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Richter*, 562 U.S. at 102. AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Section 2254(d) was designed to confirm that state courts—not federal

---

[4] "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). Federal habeas relief is precluded even when the state court's factual determination is debatable. *Id.* at 303. State-court factual determinations are entitled to a "presumption of correctness" that a petitioner may rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This "deference extends not only to express findings of fact, but to the implicit findings of the state court." *Ford v. Davis*, 910 F.3d 232, 234–35 (5th Cir. 2018).

courts—are the principal forum for asserting constitutional challenges to state convictions and guard against only extreme malfunctions in the state criminal justice system. *See Richter*, 562 U.S. at 102–04.

When analyzing the reasonableness of a state court's ultimate decision that a claim lacks merit, the federal habeas court must (1) look to the state court's particular reasons for rejecting the claim; and (2) only consider the factual record that was before the state court when it adjudicated the claim on its merits. *See Wilson v. Sellers*, 584 U.S. ___, 138 S.Ct. 1188, 1192 (2018); *see also Evans v. Davis*, 875 F.3d 201, 217 (5th Cir. 2017) (citing *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011)).

This is a straightforward inquiry when the most recent state court to reject the claim explains its decision in a reasoned opinion. *Wilson*, 138 S.Ct. at 1192. In that situation, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable. *Id.*

The inquiry can be more exacting when the most recent state court to reject the claim does not explain its reasons for doing so.[5] Under those circumstances, a federal habeas court must "look through" the unexplained decision to the last related state-court decision that does provide reasons, if there is one. *Id.* at 1192. If an earlier decision exists, the federal habeas court should presume that the unexplained state-court decision adopted the same reasoning, and then proceed with analyzing whether it was unreasonable.[6] *Id.*

---

[5] Section 2254(d) does not require a state court to give reasons before its decision can be deemed to have been "adjudicated on the merits." *Richter*, 562 U.S. at 100. Even summary denials of relief are entitled to substantial deference. *Id.* at 100–01.

[6] The State may rebut this presumption by showing that the most recent state court's unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were argued or supported by the record that the state court reviewed. *See Sellers*, 138 S.Ct. at 1192.

However, when there is no earlier state-court opinion to look to, the federal habeas court: (1) assumes that the state court applied the proper federal law to the facts; and (2) then determines whether its ultimate decision was contrary to or an objectively unreasonable application of that law. *See Jordan v. Dretke*, 416 F.3d 363, 368 (5th Cir. 2005) (citing *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)); *see also Thomas v. Vannoy*, 898 F.3d 561, 569 (5th Cir. 2018) (quoting *Evans*, 875 F.3d at 217). In making this determination, the federal habeas court may infer findings of facts necessary to support the state court's ultimate decision. *See Pondexter v. Dretke*, 346 F.3d 142, 148 (5th Cir. 2003). Any such implied findings are presumed correct unless the petitioner presents clear and convincing evidence that demonstrates otherwise. *See Young v. Dretke*, 356 F.3d 616, 629 (5th Cir. 2004).

**3.     Analysis**

As previously noted, in his federal petition, Wesson challenges the validity of his convictions on the same nine grounds that he raised in his state habeas application, which the TCCA summarily denied without written order. Because the TCCA did not provide any reasons for its decision, *Wilson* mandates that this Court "look through" the TCCA's unexplained decision to the last related state-court decision that provides reasons, if any.

Here, the COA's opinion is the last state-court decision that provides any reasons for denying Wesson's claims. But it only addresses two of Wesson's nine grounds for relief— Grounds Four and Nine. It does not address Wesson's remaining seven grounds for relief. Thus, how the Court analyzes Grounds Four and Nine will differ slightly from the rest.

A.    **Sufficiency of the Evidence (Grounds Four and Nine)**

In Grounds Four and Nine, Wesson claims that the evidence adduced at trial was insufficient to support his convictions for two reasons: (1) K.J. and Renee's trial testimony—the State's primary evidence against him—was not credible because both witnesses were impeached at trial and their respective testimonies about various details of his alleged sexual abuse were inconsistent; and (2) there is insufficient evidence to prove that he committed the three distinct sexual acts described in Counts Two, Three, and Four of the indictment specifically on August 8, 2012, the date alleged in the indictment. (*See* Dkt. No. 2 at 7, 9; *see also* Dkt. No. 2-1 at 28–29, 42–45.)

Because the TCCA did not provide any reasoning for rejecting these claims, *Wilson* mandates that this Court presume that the TCCA adopted the COA's reasoning for doing so and then analyze whether that reasoning was unreasonable.[7]

Here, the COA reviewed Wesson's claims under *Jackson v. Virginia*, 443 U.S. 307 (1979), which establishes the legal standard for reviewing the sufficiency of the evidence to support a criminal conviction. Under *Jackson*, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution—*not* the defendant—any

---

[7] To present claims to the TCCA, a petitioner must pursue his claims through direct appeal and a PDR or through a state habeas application. *See Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990). Here, Wesson did both. Although challenges to the sufficiency of the evidence are not cognizable in a Texas application for a writ of habeas corpus, the Court concludes that the TCCA adjudicated Wesson's claims on their merits in refusing his PDR. *See Ex parte Grigsby*, 137 S.W.3d 673, 674 (Tex. Crim. App. 2004). It is not necessary for the state court to indicate affirmatively that its disposition of federal claims is on the merits. *See Dorsey v. Stephens*, 720 F.3d 309, 316 (5th Cir. 2013) (citations omitted). The presumption that a state-court decision was on the merits is a strong one that may be rebutted only in unusual circumstances. *Id.*; *see Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991) ("[w]here there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the claim rest upon the same ground."). Here, Wesson raised his sufficiency claims in his counseled direct appeal and then, although less clearly, in his pro se PDR, which the TCCA refused without comment. (*See* Dkt. Nos. 11-10, 11-14.) There is no indication in the record that the TCCA refused Wesson's PDR on procedural grounds. And neither Wesson nor the State has attempted to rebut the presumption that the TCCA's decision as to his sufficiency claims was on the merits.

rational trier of fact could have found the essential elements of the crime beyond a

reasonable doubt based on the record evidence presented at trial. *Jackson*, 443 U.S. at 319

(citations omitted). This standard gives full play to the responsibility of the trier of fact to

resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences

from basic facts. *Id.* Once a defendant has been found guilty of the crime charged, the

factfinder's role as weigher of the evidence is preserved through a legal conclusion that,

upon judicial review, *all of the evidence* is to be considered in the light most favorable to the

prosecution. *Id.* This means a reviewing court "faced with a record of historical facts that

supports conflicting inferences must presume—even if it does not affirmatively appear in the

record—that the trier of fact resolved any such conflicts in favor of the prosecution, and

must defer to that resolution." *See Cavazos v. Smith*, 565 U.S. 1, 6 (2011) (citing *Jackson*, 443

U.S. at 319).

In its 12-page opinion, the COA conducted a thoughtful review of the evidence

admitted at trial in conjunction with the applicable criminal statute and caselaw interpreting

it. (*See* Dkt. No. 11-17 at 44–55.) After acknowledging that the evidence arguably

supported conflicting inferences, the COA noted that "the jury apparently chose to believe

K.J.'s testimony about [Wesson]'s sexual abuse." (*See* Dkt. No. 11-17 at 53.) The COA

further explained and concluded as follows:

> The factfinder may believe all, some, or none of a witness's testimony
> because the factfinder is the sole judge of the weight and credibility of
> the witness. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App.
> 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008,
> pet. ref'd). And, the testimony of the child alone is sufficient to support
> a conviction for indecency with a child. *See* TEX. CODE CRIM. PROC.
> ANN. Art. 38.07 (West Supp. 2017); *Martinez v. State*, 178 S.W.3d 806,
> 814 (Tex. Crim. App. 2005); *Proctor v. State*, 356 S.W.3d 681, 685 (Tex.
> App.—Eastland 2011, pet. ref'd). We defer to the trier of fact's
> resolution of any conflicting inferences raised in the evidence and
> presume that the trier of fact resolved such conflicts in favor of the
> verdict.

> Viewing all the evidence in the light most favorable to the verdict, we
> conclude that a rational trier of fact could have found beyond a
> reasonable doubt that [Wesson] engaged in sexual contact with K.J.
> when he touched her vagina with his fingers and with his penis and
> forced her to touch his penis. The jury could have found beyond a
> reasonable doubt that he committed the offense of indecency by
> exposure when he exposed his penis in her presence. We overrule
> [Wesson]'s sufficiency issues.

(*Id.*)

The COA also overruled Wesson's claim that the State had adduced insufficient

evidence to prove that he had committed each of the distinct sexual acts described in Counts

Two, Three, and Four of the indictment on August 8, 2012. The COA explained that,

under Texas law, the State was not required to do so to obtain his convictions. Rather, the

"on or about" language included in the indictment allowed the State to prove that the

offense conduct occurred on a date other than the one alleged in the indictment as long as

that date was anterior to the presentment of the indictment and within the statutory

limitation period. (*Id.* at 53–54.)

The COA found that the State had adduced sufficient evidence to prove that

Wesson had committed all three sexual acts *throughout* 2012, well before the indictment was

presented in July 2016 and within the statutory limitation period.[8]

> In her 2012 interview, K.J. said that, recently, every time [Renee] was
> at work, [Wesson] touched her while she slept. The indictment alleged
> that [Wesson]'s acts of sexual abuse occurred on or about August 8,
> 2012. K.J. and [Renee] spoke to Detective Pipes on August 10, 2012.
> At trial, K.J. explained that [Wesson] touched her vagina with his
> fingers and penis, both under and over her clothes. She said that this
> happened on several occasions. K.J. also testified that she would wake
> up with [Wesson]'s hand down her pants or, sometimes, with her hand
> touching his penis. In addition, K.J. had woken up to [Wesson] on top
> of her. We hold that the State adduced sufficient evidence for the jury
> to convict [Wesson] of the charged offenses.

---

[8] There is no statute of limitations for the offense of indecency with a child. *See Woodall v. State*, 376
S.W.3d 134, 141 (Tex. App.—Texarkana 2012, no pet.) (citing Tex. Code Crim. Proc. Ann.
§ 12.01(1)(E) (West. Supp. 2011)).

(*Id.* at 53–54.)

Wesson is not entitled to relief unless he can demonstrate that the TCCA's presumed adoption of the COA's reasons for denying his claims was unreasonable.  After reviewing Wesson's entire trial transcript and all exhibits that were admitted into evidence at his trial, in conjunction with the applicable law, the Court concludes that Wesson has failed to do so.

Here, Wesson merely insists that the TCCA's decision was incorrect.  He urges the Court to find that the jury assessed the credibility of K.J. and Renee's trial testimony improperly.  Citing various portions of the trial transcript, Wesson reiterates that, at trial, K.J. and Renee made several statements about the timeline and factual circumstances surrounding specific instances of his alleged sexual abuse that were materially inconsistent with their prior statements given to Abilene Police Department (APD) detectives and Child Protective Services (CPS) investigators in 2011 and 2012.  Wesson insists that K.J. and Renee's inconsistent statements raise the inference that they were both lying about his abuse and, in essence, framed him.

As acknowledged by the COA, the Court does not dispute that the evidence adduced at trial arguably supports conflicting inferences—that K.J. and Renee were either lying or telling the truth about his sexual abuse.  But AEDPA does not permit this Court to conduct a de novo review of Wesson's claims.  In other words, on federal habeas review, this Court may not make its own credibility assessments, reweigh the evidence, or substitute its own opinion for that of the jury or the TCCA.  Rather, as explained by the COA, it is the sole province of the jury to assess the credibility of the testimony given at trial and weigh the evidence.  And under *Jackson*, once a criminal defendant has been convicted, a reviewing court *must* presume that the jury resolved any conflicting inferences raised by the evidence in favor of the prosecution and defer to that resolution.  This is precisely what the COA, and

presumably the TCCA, did in denying Wesson's claims. Wesson makes no effort to explain how the TCCA's application of *Jackson* to his claims was unreasonable or that its denial of them was based on an unreasonable determination of the facts in light of the evidence presented to it.

For these reasons, the Court concludes that Wesson is not entitled to relief on Grounds Four and Nine.

### B.     False Evidence (Ground Two)

In Ground Two, Wesson claims that the State violated his due process rights by using false evidence to secure his convictions. Here again, Wesson contends that K.J. and Renee lied about his sexual abuse at trial. (*See* Dkt. No. 2 at 6; *see also* Dkt. No. 2-1 at 24–25.) Respondent answers that Wesson's claims have no merit and fail to satisfy AEDPA.

Because there is no TCCA or earlier state-court opinion that provides any reasoning for denying these claims, this Court must assume that the TCCA applied the proper federal law to these claims, which, as pointed out by Respondent, is *Napue v. Illinois*, 360 U.S. 264, 269 (1959).

Under *Napue v. Illinois*, 360 U.S. 264, 269 (1959), a state violates a defendant's due process rights when it knowingly presents false evidence, or allows it to go uncorrected when it appears, to obtain a conviction. *See Giglio v. United Sates*, 405 U.S. 150, 153–54 (1972) (citations omitted). To establish that the State denied him due process by introducing perjured testimony, Wesson must show that (1) a witness for the state testified falsely; (2) the testimony was material; and (3) the prosecution knew the testimony was false. *See Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001) (citing *Giglio,* 405 U.S. at 153–54)).

11

Perjured testimony is that which is knowingly false and does not include mere inconsistences between a witness's pretrial statements and statements in trial. *See United States v. Viera*, 819 F.2d 498, 502 (5th Cir. 1987). Due process in not implicated when testimony is challenged by another witness or is inconsistent with prior statements; contradictory testimony among different witnesses merely establishes a credibility question for the jury and does not, standing along, establish perjury. *See United States v. Brown*, 634 F.2d 819, 827 (5th Cir. 1981) (citing *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990)).

In denying Wesson's claim, the TCCA implicitly found that Wesson failed to satisfy at least one of the three elements necessary to establish a due process violation under *Napue*. Based on the evidence adduced at trial, the TCCA could have reasonably concluded that Wesson failed to demonstrate that a witness for the State had testified falsely. Wesson does not present any "clear and convincing" evidence to rebut this implicit finding, or any others made by the TCCA, all of which are presumptively correct. Nor does Wesson try to explain how the TCCA's presumed application of *Napue* to his claims was unreasonable. Instead, Wesson insists that K.J. and Renee's contradictory testimony and being impeached with their prior inconsistent statements proves that their trial testimony about the timeline and circumstances surrounding specific instances of his sexual abuse was false. He is incorrect. At most, Wesson has identified a credibility issue that was conclusively resolved by the jury.

For these reasons, the Court concludes that Wesson has failed to demonstrate that the TCCA's adjudication of this claim was unreasonable. He is therefore not entitled to relief on this ground.

### C.   Trial-Court Error (Ground Three)

In Ground Three, Wesson claims that the trial court erred in sustaining an evidentiary objection raised by the prosecutor, Joel Wilks. (*See* Dkt. No. 2 at 7; *see also* Dkt.

12

No. 2-1 at 26–27.) When Propst cross-examined Renee about prior inconsistent statements that she had made in her August 10, 2012 affidavit, Wilks objected that Propst was not following the proper procedure under Texas Rule of Evidence 613, which he argued required Propst to show Renee a copy of her affidavit. After the court sustained the objection, Propst provided Renee a copy of her affidavit and continued his cross-examination of her. Wesson insists that doing so was not required under Rule 613 and was, therefore, improper.

Citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), Respondent answers that Wesson's claim has no merit because he cannot show that the trial court's error, if any, was constitutional in nature or that it had a "substantial and injurious effect or influence on the verdict." The Court agrees.

Additionally, the Court notes that "federal habeas relief does not lie for errors of state law," and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991); *West v. Johnson,* 92 F.3d 1385, 1404 (5th Cir. 1996). In short, federal habeas relief will not issue to correct errors of state law, unless a federal issue is also present. *Estelle*, 502 U.S. at 67–68.

The TCCA's judgment is a final and authoritative answer to Wesson's claims that the trial court violated or misapplied state law. This Court will not reexamine state-court determinations on state-law questions. Although Wesson contends that the trial court's ruling violated his due process rights, he cites no United States Supreme Court case in support of his contention and makes no effort to explain how. Moreover, he does not explain how producing the affidavit was unduly prejudicial or how the trial court's ruling rendered his trial fundamentally unfair. In any event, although Rule 613 did not *require* Propst to show Renee her affidavit before cross-examining her about its contents, it certainly

13

did not *prohibit* him from doing so. *See* Tex. R. Evid. 613. Lastly, Wesson makes no attempt to argue or demonstrate that the TCCA's ultimate decision to deny this claim was, in any way, unreasonable.

For these reasons, the Court concludes that Wesson has failed to demonstrate that he is entitled to relief on this claim under Section 2254.

### D.    Hearsay (Ground Five)

In Ground Five, Wesson complains that APD Detective Tim Pipes's August 10, 2012 recorded interview of Renee was improperly admitted into evidence at trial. During the interview, Pipes asked Renee about statements that K.J. had made to her about Wesson's sexual abuse. Wesson contends that Renee's responses constituted inadmissible hearsay under Texas's "outcry statute," which, under specific circumstances, provides evidentiary hearsay exceptions in child-abuse cases.[9] (*See* Dkt. No. 2 at 7; *see also* Dkt. No. 2-1 at 30–32.)

As previously noted, state evidentiary law has no effect on a federal habeas court's review of the constitutionality of a trial, unless it is asserted that the state law itself violates the Constitution. *See Estelle*, 502 U.S. at 67–68; *see also Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993). Here, Wesson does not contend that Article 38.072 of the Texas Code of Criminal Procedure violates the Constitution. He merely contends that Renee's "outcry" testimony was improperly admitted into evidence under it.

---

[9] The Texas outcry statute creates a hearsay exception in the prosecution of certain sexual offenses committed against children from the admission of a child's first outcry of sexual abuse to an adult. *See* Tex. Code Crim. Proc. Ann. § 38.072; *see also Gibson v. State*, 595 S.W.3d 321, 326 (Tex. App.— Austin 2020, no pet.). "Because it is often traumatic for children to testify in a courtroom setting, especially about sexual offenses committed against them, the [Texas] Legislature enacted Article 38.072 to admit the testimony of the first adult a child confides in regarding the abuse." *Id.* (quoting *Martinez v. State*, 178 S.W.3d 806, 810 (Tex. Crim. App. 2005)). "This witness may recite the child's out-of-court statements concerning the offense, and that testimony is substantive evidence of the crime." *Id.* (quoting *Martinez*, 178 S.W.3d at 811).

Respondent answers that Wesson's claim has no merit because Renee's recorded statements were admissible as outcry-witness testimony under Article 38.072.  In turn, Respondent argues that Wesson cannot establish any kind of constitutional error based on its admission into evidence.  The Court agrees.  Moreover, the Court concludes that Wesson has failed to show how the admission of Renee's statements rendered his trial fundamentally unfair because K.J. subsequently testified in court, making the same or similar statements about Wesson's abuse that were admitted into evidence through Renee's outcry-witness testimony.[10]  Lastly, Wesson makes no attempt to argue or demonstrate that the TCCA's ultimate decision to deny his claim involved an improper or unreasonable application of federal law.

For these reasons, the Court concludes that Wesson has failed to demonstrate that he is entitled to relief on this claim under Section 2254.

E.      **Failure to Include Jury Instruction (Ground Six)**

In Ground Six, Wesson contends that his convictions are unlawful because they were obtained using K.J.'s uncorroborated trial testimony.  (*See* Dkt. No. 2 at 8; *see also* Dkt. No. 2-1 at 33–37.)  He contends that, under Texas law, K.J. was an "accomplice" to her mother's plan to frame him.  Citing Texas Code of Criminal Procedure Article 38.14, Wesson argues that a conviction cannot be had on the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed.  *See* Tex. Code Crim. Proc. Ann. § 38.14.  He insists that he was entitled to have an "accomplice-witness" instruction included in the jury charge.

---

[10] In cases involving the improper admission of outcry testimony, the error is harmless when the victim testifies in court to the same or similar statements that were improperly admitted or other evidence setting forth the same facts is admitted without objection. *See Gibson*, 595 S.W.3d at 327 (citations omitted).

The Court concludes that Wesson's claim is nonsensical and has no merit. As argued by Respondent, there is no evidence that K.J. was an accomplice within the meaning of Article 38.14. Under Texas law, a witness is an accomplice when the witness has been charged with the same offense as the defendant or a lesser-included offense, or "when the evidence clearly shows that the witness could have been so charged." *See Zamora v. State*, 411 S.W.3d 504, 510 (Tex. Crim. App. 2013) (citations omitted). Here, there is no evidence that K.J. was charged with the same or lesser-included offense as Wesson.

Regardless, Wesson's claim again stems from an alleged error of state law. But an error in the application of state law by the trial court generally does not provide grounds for federal habeas relief. *See Pemberton v. Collins*, 991 F.2d 1218, 1223 (5th Cir. 1993) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)). And likewise, improper jury instructions in a state criminal trial will generally not support federal habeas relief. *See Estelle*, 502 U.S. at 72 (explaining that a petitioner has no right to federal habeas relief simply because a jury instruction was deficient under state procedural law). Rather, the only question for the federal court is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). And "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

Here, Wesson has failed to show that he was entitled to the accomplice-witness instruction under state law. In turn, Wesson cannot demonstrate that the failure to include the instruction in the jury charge had a "substantial and injurious effect or influence on the verdict" or "so infected the entire trial" that his convictions violate due process. Moreover, he makes no attempt to argue or demonstrate that the TCCA's ultimate decision to deny his claim involved an improper or unreasonable application of federal law.

16

For these reasons, the Court concludes that Wesson has failed to demonstrate that he is entitled to relief on this claim under Section 2254.

### F.   Unlawful Arrest (Ground Seven)

In Ground Seven, Wesson claims that his March 2015 arrest violated the Fourth Amendment. Specifically, he contends that the State did not have probable cause to arrest him at that time because K.J. and Renee's reported sexual-abuse allegations against him were "dismissed" in November 2012. He also claims that he did not receive his *Miranda* warnings before his 2012 interview or 2015 arrest. (*See* Dkt. No. 2 at 8; *see also* Dkt. No. 2-1 at 38–39.)

#### i.   Fourth Amendment

Although not raised by Respondent, the Court concludes that *Stone v. Powell*, 428 U.S. 465 (1976), bars this Court from reviewing Wesson's Fourth Amendment claim under Section 2254. In *Stone*, the United States Supreme Court held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002) (quoting *Stone*, 428 U.S. at 482). The *Stone* rule applies to both unlawful-arrest claims and illegal-search and -seizure claims, and it applies whether or not the defendant actually employs the processes available to litigate such claims. *See Hughes v. Dretke*, 412 F.3d 582, 596 (5th Cir. 2005); *see also Carver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978).

Here, the record demonstrates that Texas afforded Wesson an opportunity to litigate his Fourth Amendment claim fully and fairly. Although it is unclear from the record whether Wesson raised this claim in the trial court, the record shows that he raised and

litigated it in his state habeas application. The fact that Wesson may disagree with the State's ultimate decision to deny his claim is not sufficient to overcome the *Stone* bar. *See Swicegood v. Alabama*, 577 F.2d 1322, 1324 (5th Cir. 1978). Moreover, Wesson makes no attempt to argue or demonstrate that *Stone* is inapplicable to this claim.

For these reasons, the Court concludes that Wesson's Fourth Amendment claim is not cognizable under Section 2254 and should therefore be denied.

### ii. *Miranda* Violation

In the second part of Ground Seven, Wesson claims that the APD failed to provide him the requisite warnings under *Miranda v. Arizona*, 384 U.S. 436 (1996), before his 2012 interview and 2015 arrest. Respondent answers that Wesson's claims are conclusory and have no merit. The Court agrees.

In *Miranda v. Arizona*, the United States Supreme Court held that the Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during "custodial interrogation" without a prior warning. *Illinois v. Perkins,* 496 U.S. 292, 296 (1990). Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody...." *Id.* (quoting *Miranda*, 384 U.S. at 444). Whether a suspect is in custody for *Miranda* purposes is a mixed question of law and fact. *See United States v. Coulter*, —F.4th—, 2022 WL 2801185, at *3 (5th Cir. 2022) (citations omitted). To determine whether a suspect is in custody for *Miranda* purposes, courts should consider various factors, including the length, location, and nature of questioning; the amount of restraint on the individual's movement; and statements made by officers regarding the individual's freedom to move or leave. *Id.* at *4 (citing *United States v. Wright*, 777 F.3d at 775 (5th Cir. 2015)).

The Court concludes that, in denying Wesson's *Miranda* claims, the TCCA reasonably concluded that, for both events, Wesson was either not "in custody" or was advised of all the rights required by *Miranda*, or both. Wesson does not present any "clear and convincing" evidence to rebut the implicit factual findings that support its conclusion, which are presumptively correct. Nor does Wesson try to explain how the TCCA's application of *Miranda* to his claims was improper or unreasonable.

Moreover, the Court has viewed the video recording of the APD's 2012 interview of Wesson, which was admitted into evidence at his trial. (*See* Dkt. No. 22.) Before questioning Wesson about K.J.'s sexual-abuse allegations, Detective Frank Shoemaker explicitly advised Wesson of all his *Miranda* rights and that he could terminate the interview at any time. Wesson indicated that he fully understood his rights and "had no problem" continuing the interview.

Regarding his 2015 arrest, Wesson provides no evidence to substantiate his claim that the APD did not *Mirandize* him prior to his arrest. And he does not allege or present any evidence that the APD interrogated him following his arrest or that any statements he may have made afterward were admitted into evidence at his trial to his detriment.

For these reasons, the Court concludes that Wesson has failed to demonstrate that he is entitled to relief on these claims under Section 2254.

### G.    Defective Indictment (Ground Eight)

In Ground Eight, Wesson claims that his indictment was invalid because the three separate offenses for which he was charged and ultimately convicted did not "arise out of the same criminal episode," as required by Texas law. (*See* Dkt. No. 2 at 8; *see also* Dkt. No. 2-1 at 40–41.)

Respondent answers that the Court is barred from reviewing Wesson's claim under Section 2254 and that it otherwise has no merit. The Court agrees.

The sufficiency of a state criminal indictment is not a matter of federal habeas relief unless it can be shown that the indictment is so defective that it deprives the state court of jurisdiction. *See Wood v. Quarterman*, 503 F.3d 408, 412 (5th Cir. 2007) (quoting *McKay v. Collins*, 12 F.3d 66, 68 (5th Cir. 1994)). However, if the question of the sufficiency of the indictment is squarely presented to the highest state court, consideration of the question is foreclosed in federal habeas corpus proceedings. *Johnson v. Johnson*, 114 F.3d 1180, 1997 WL 255692, at *3 (5th Cir. 1997) (citing *Morlett v. Lynaugh*, 851 F.2d 1521, 1523 (5th Cir. 1988)).

Here, Wesson squarely presented this issue to the TCCA in his state habeas application. (*See* Dkt. No. 11-17 at 65–81; 126–127.) By denying Wesson relief, the TCCA necessarily, though not expressly, found that his convicting court had jurisdiction over his case and that the indictment was sufficient for that purpose. *See Alexander v. McCotter*, 775 F.2d 595, 599 (5th Cir. 1985).

For these reasons, the Court concludes that Wesson's eighth ground for relief is not cognizable under Section 2254 and should therefore be denied.[11]

---

[11] If this Court was not precluded from reviewing Wesson's challenge to the indictment under Section 2254, it would conclude that it has no merit. Under Texas law, to establish that offenses occurred in the same "criminal episode," it need only be shown that that the offenses for which a defendant was charged and convicted were the repeated commission of the *same or similar offense*. *See Waddell v. State*, 456 S.W.3d 366, 370 (Tex. App.—Corpus Christi-Edinburg 2015, no pet.) (finding that multiple indecency-with-a-child offenses arose from the same criminal episode). And there is no requirement that all the offenses arising out of the same criminal episode occur within any particular time frame. *See Waddell*, 456 S.W.3d at 369 (citing *Casey v. State*, 249 S.W.3d 825, 831 (Tex. App.—El Paso 2011, pet. ref'd)).

### H.    Ineffective Assistance of Counsel (Ground One)

Lastly, in Ground One, Wesson contends that his trial counsel, Jeffery Propst, was ineffective in several instances, but his claims are somewhat convoluted and difficult to follow. Guided by Respondent's answer, which was not refuted by Plaintiff's reply, the Court understands Wesson's claims to be that Propst was ineffective by failing to: (1) discuss and consult with Wesson about trial strategy and the State's evidence against him; (2) thoroughly investigate K.J. and Renee's psychological state and the reasons for his failing marriage to Renee; and (3) file motions and lodge various objections before and during trial. Wesson contends that Propst's failures substantially "disadvantaged" his defense. (*See* Dkt. No. 2 at 6; *see also* Dkt. No. 2-1 at 12–23.)

Respondent answers that Wesson's claims are either conclusory, have no merit, or otherwise fail to satisfy AEDPA. For the reasons explained below, the Court agrees.

Because there is no TCCA or earlier state-court opinion that provides any reasoning for denying Wesson's ineffective-assistance-of-counsel (IAC) claims, this Court must assume that the TCCA applied the proper federal law to these claims, which, as pointed out by Respondent, is *Strickland v. Washington*, 466 U.S. 668 (1984).

To prevail on an IAC claim under *Strickland*, a petitioner must show (1) "counsel's performance was deficient," and (2) "the deficient performance prejudiced the defense." *Meja v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Strickland*, 466 U.S. at 687).

To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Richter*, 562 U.S. at 104 (quoting *Strickland*, 466 U.S. at 688). A court considering an IAC claim must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. *Id.* The challenger's burden is to show "that counsel

made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*

With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). This is a heavy burden that requires a "substantial," and not just a "conceivable," likelihood of a different result. *See Richter*, 562 U.S. at 112; *see also Pinholster*, 563 U.S. at 189.

"Surmounting *Strickland's* high bar is never an easy task." *Richter*, 562 U.S. at 105 (citing *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)). Even under de novo review, the standard for judging counsel's representation is a most deferential one. *Id.* Unlike a later-reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. *Id.* It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom." *Id.*

Establishing that a state court's application of *Strickland* was unreasonable under Section 2254(d) is all the more difficult. *Id.* The standards created by *Strickland* and Section 2254(d) are both "highly deferential," and when the two apply in tandem, review is

22

"doubly" so. *Id.* The *Strickland* standard is a general one, so the range of reasonable applications is substantial. *Id.* Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under Section 2254(d). *Id.* When Section 2254(d) applies, the question is not whether counsel's actions were reasonable. *Id.* The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id.* Additionally, if a petitioner fails to satisfy either the deficiency or prejudice prong of the *Strickland* test, then the Court need not consider the other prong. *See Strickland,* 466 U.S. at 697.

### i.     Failure to Consult and Provide Copies of Discovery

Wesson asserts that Propst failed to meet and consult with him about trial strategy and the State's evidence against him. Specifically, Wesson claims that Propst never provided or discussed with him the "discovery, police reports, sworn statements, or phone records" that he requested. (*See* Dkt. No. 2-1 at 12–13, 17–19.) He also claims that Propst manipulated certain video-recorded interviews and concealed them from him. Wesson appears to argue that, had Propst provided all these materials to Wesson and discussed their contents with him, Propst would have uncovered additional material inconsistencies in K.J. and Renee's accounts of his alleged sexual abuse that could have bolstered his defense at trial.

In support of his claim, Wesson attached several letters that he wrote to Propst and the trial judge, complaining about Propst's inattention to the case, lack of communication, and failure to respond to his repeated requests for materials. But Wesson does not allege any facts or present evidence to demonstrate that he was, in fact, prejudiced by Propst's omissions. He merely speculates that more attentive representation may have changed the outcome. But it is not enough to show that errors had some conceivable effect on the

23

outcome of the proceeding. *See Richter*, 562 U.S. at 104. Moreover, the jury heard evidence that K.J. and Renee had made inconsistent statements. Propst pointed them out in his cross-examination of K.J. and Renee and during closing argument. Wesson has failed to demonstrate or explain how discovering any additional inconsistencies would have changed Propst's trial strategy or, if presented to the jury, would have convinced it to discredit K.J. and Renee's testimony about his abuse.

For these reasons and the reasons stated in Respondent's answer, the Court concludes that Wesson's claims are conclusory and have no merit. The TCCA reasonably concluded that Wesson failed to satisfy the prejudice prong of *Strickland*. Wesson does not present any "clear and convincing" evidence to rebut the TCCA's implicit factual findings that support its conclusion, which are presumed correct. Nor does he make any effort to establish that the TCCA's application of *Strickland* to his claim was unreasonable.

### ii.    Failure to Investigate

Next, Wesson asserts that Propst failed to thoroughly investigate his failing marriage to Renee and the psychological state of her and K.J. He contends that, had Propst done so, he would have discovered additional evidence to prove that K.J. and Renee had the propensity and motive to lie. Specifically, Wesson contends that a more thorough investigation would have revealed that there was an "atmosphere of mistrust" in their home; that K.J. was dishonest; and Renee was bipolar. (*See* Dkt. No. 2-1 at 13–14.)

Respondent argues that Wesson's claim is conclusory and has no merit. The Court agrees. Here again, Wesson does not allege any facts or present evidence to demonstrate that he was, in fact, prejudiced by Propst's failure to conduct a more thorough investigation of these matters. He merely speculates that doing so may have improved his chances at trial. But, again, it is not enough to show that Propst's omissions had some conceivable

effect on the outcome of the proceeding. *See Richter*, 562 U.S. at 104. Moreover, as noted by Respondent, Propst addressed and argued these points at trial. During cross-examination, Renee admitted she had been diagnosed as "bipolar" and that, at the time of trial, her divorce from Wesson was pending. She admitted that, in her divorce papers, she was seeking a $250,000.00 judgment against Wesson for, among other reasons, sexually assaulting K.J. (*See* Dkt. 11-5 at 131; 144-45.) And on direct examination, Wesson's daughter, Tamber Wesson, specifically testified that K.J. often lied and made up stories. (*See* Dkt. No. 11-7 at 15–18.) In sum, the record shows that the jury considered and ultimately rejected Wesson's arguments. Wesson has not shown that any additional investigation by Propst would have produced a different result.

For these reasons, the Court concludes that the TCCA reasonably concluded that Wesson failed to satisfy both prongs of *Strickland*. Wesson does not present any "clear and convincing" evidence to rebut the TCCA's implicit factual findings that support its conclusion, which are presumed correct. Nor does he make any effort to establish that the TCCA's application of *Strickland* to his claim was unreasonable.

### iii.    Failure to File Motions and Lodge Objections

Wesson asserts that Propst failed to adequately prepare for trial because he did not (1) file a motion to quash the indictment; (2) lodge a hearsay objection to Renee's outcry-witness testimony; or (3) file a motion in limine regarding Wesson's prior abuse allegations. (*See* Dkt. No. 2-1 at 14–17.)

The Court concludes that the TCCA reasonably concluded that Wesson failed to satisfy both prongs of *Strickland*. Simply put, counsel is not ineffective for failing to make futile motions or objections. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990); *see also Smith v. Puckett*, 907 F.2d 981, 585 n.6 (5th Cir. 1990).

For the reasons previously explained in sections D and G, the Court concludes that, had Propst filed a motion to quash the indictment and objected to the admission of Renee's outcry-witness testimony as inadmissible hearsay, the trial court would have denied the motion and overruled his objection. Wesson cannot demonstrate that Propst's performance was deficient for failing to file a meritless motion and evidentiary challenge. In turn, he cannot demonstrate that he was prejudiced by Propst's failure to do so.

With respect to Wesson's claim that Propst failed to file a motion in limine, as noted by Respondent, his claim is contradicted by the record. On August 29, 2016, Propst filed a motion in limine, seeking an order instructing the State and its witnesses to refrain from making any references to any extraneous crime or other bad act committed by Wesson that was not alleged in the indictment. (*See* Dkt. No. 11-2 at 18–20.)

Again, Wesson does not present any "clear and convincing" evidence to rebut the TCCA's implicit findings of fact that support its conclusion, which are presumed correct. Nor does he make any effort to establish that the TCCA's application of *Strickland* to his claim was unreasonable.

Because Wesson has failed to overcome the double deference afforded to IAC claims under Section 2254(d), the Court concludes that he is not entitled to federal habeas relief on these claims.

**4.    Conclusion**

For the foregoing reasons and those stated in Respondent's answer, the Court concludes that Wesson has failed to demonstrate that the TCCA's adjudication of his claims resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceedings.

*See* 28 U.S.C. § 2254(d). Additionally, as explained above, the Court concludes that some of Wesson's grounds for relief are not cognizable in federal habeas review.

The Court therefore orders:

(1)     The petition for writ of habeas corpus is denied and dismissed with prejudice.

(2)     All relief not granted is denied, and any pending motions are denied.

(3)     Under Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c), this Court concludes that a certificate of appealability should be denied. For the reasons set forth above and in Respondent's answer, Wesson has failed to show that reasonable jurists would find (1) this Court's "assessment of the constitutional claims debatable or wrong," or (2) "it debatable whether the petition states a valid claim of the denial of a constitutional right" and "debatable whether [this Court] was correct in its procedural ruling." *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

The Court will enter judgment accordingly.

Dated August __30__, 2022.

JAMES WESLEY HENDRIX
United States District Judge